**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

SHARIAN LLOYD,

       Plaintiff,

v.                                      Case No. 10-14903

CITY OF DETROIT, et al.,

       Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Sharian Lloyd brought suit against Defendants alleging deprivation of constitutional rights pursuant to 42 U.S.C. § 1983 and various state law claims. Defendants Lisa Ray, Patrice Cooper, David Marshall, Kenneth Germain, Brian Franz (collectively the "Defendant Officers"), and the City of Detroit timely removed to this court on December 9, 2010. On January 24, 2011, the court remanded Plaintiff's state law claims to the Wayne County Circuit Court. Following discovery, Defendants moved for summary judgment on October 17, 2011. Plaintiff responded on November 8, 2011. After reviewing the motion and briefs, the court concluded that the parties had not clearly identified which issues were in dispute in the case and directed Plaintiff to file a supplemental brief clarifying her § 1983 claims. Plaintiff's supplemental brief indicated that the complaint asserts four § 1983 claims against the Defendant Officers and a single § 1983 municipal liability claim against Defendant City of Detroit. The court heard oral argument on December 21, 2011. For the following reasons the court will grant Defendants' motion for summary judgment.

## I. BACKGROUND

The facts[1] underlying this case stem from Plaintiff's desire to file a police report at the Northeast District police station in Detroit, Michigan, on September 28, 2008. Upon entering the police station at approximately 8:55 p.m., Plaintiff signed in and spoke with Defendant Officer Lisa Ray, who instructed her to sit down. (Lloyd Dep. 23:1-7, Aug. 11, 2011, Dkt. # 38-5.) After waiting 30 minutes in an empty waiting area, Plaintiff approached the front desk and asked Defendant Sergeant Kenneth Germain if an officer would take her police report. (*Id.* at 23:8-15.) Defendant Germain responded in the negative, and Defendant Ray instructed Plaintiff to leave the police station. (*Id.*) According to Plaintiff, the officers did not explain to her why they would not accept her report. Defendant Ray, however, states that she informed Plaintiff that the incident underlying Plaintiff's complaint did not occur in Detroit, and therefore she needed to file her report in the appropriate jurisdiction, the City of Hamtramck. (Ray Dep. 7:5-10, Aug. 24, 2011, Dkt. # 38-2.) Following Defendant Ray's order to leave, Plaintiff replied that "[she] wasn't leaving until I get the police report." (Lloyd Dep. 23:14-15.) Both There is no dispute that Plaintiff was "upset" and speaking in a "louder than normal" voice. (*Id.* at 32:4-5; *see also* Ray Dep. at 13:13-17.)

---

[1]The court repeats here what was mentioned after the conclusion of oral argument: neither party adhered to this court's motion practice guidelines set forth in the court's May 9, 2011 Scheduling Order. Defendants disregarded the court's instructions with respect to Rule 56 motions by failing to number each paragraph in their "Statement of Facts" section and omitting citation to the record for each proffered fact. Plaintiff's responsive brief failed to state which, if any, of Defendants' proffered facts were actually contested, or on what basis. Compounding Plaintiff's failure is her decision to attach the depositions of all relevant individuals *in toto*. A court in this situation is not often willing to sift through countless pages of discovery to determine for itself whether Plaintiff has substantiated various factual contentions.

On the night in question, Defendant Officer Patrice Cooper was the Law Enforcement Information Network ("LEIN") operator on duty at the Northeast District police station and was stationed in an office approximately 10 to 15 feet away from Defendant Ray's location at the front desk. (Cooper Dep. 7:8-19, Aug. 24, 2011, Dkt. # 38-4.) Defendant Cooper overheard "a woman yelling and screaming in the front lobby of the precinct," (*id.* at 7:22-23), left her office to investigate the commotion, (*id.* at 8:4-10.), and observed Plaintiff throw a blue bag on the counter of the front desk and continue to yell, (*id.* at 10:5-20). According to the arrest report filed by Defendant Cooper, the LEIN database indicated that Plaintiff had an outstanding traffic warrant for the City of Hamtramck. (Pl.'s Resp. Ex. 6, Dkt. # 38-6). Cooper approached Plaintiff and informed her that she was "going to have to leave." (Cooper Dep. 11:4-8.) Plaintiff insisted that she was not leaving, and thereafter Cooper and "several officers" arrested Plaintiff. (*Id.* at 11:9-22.) Cooper further states that Plaintiff fell to the floor as a result of "pulling away" from the arresting officers and was ultimately walked back to lockup. (*Id.* at 12:3-23.)

Plaintiff's account of the arrest is dramatically different than Defendant Cooper's. According to Plaintiff, after she told Defendant Ray that she was not leaving the police station

> Officer Ray went through her spiel about my mental disorder [and] some officers snuck up behind me, it seemed to be a lot of them, and they ambushed me, grabbed my hands and the officer, . . . she had a Glock semi-automatic pointed at me and jammed it in my side.[2]

---

[2]Plaintiff is unable to identify the officer who pointed a gun at her but describes her as a young, "[s]hort and stocky" African-American female with black hair and a "[b]owl haircut and bangs." (Lloyd Dep. 34:14-35:7.) There is no evidence in the record

3

(Lloyd Dep. at 34:8-13.)  Plaintiff states that after having the weapon drawn on her, she

"urinated and defecated on [herself]."  (*Id.* at 23:16-24.)  Upon seeing the officer draw

her weapon, "Officer Ray ran from her position, took the gun away from the officer, held

it down in a safety position[,] . . . ran around her desk and put it in the desk where the

officers put their guns." (*Id.* at 35:12-16.)  Once Defendant Ray took the gun away from

the unidentified officer, the same officer who drew her weapon "pulled me and I fell to

the ground." (*Id.* at 36:1-11.)   Another unidentified officer told Plaintiff to "get your ass

up." (*Id.* at 37:21-22.)  Plaintiff told the officer that she was on her way to the hospital

"because [she] hadn't felt well." (*Id.* at 37:25-38:5.)  Failing to respond the officer's

demand to get up off the floor, the officers

> tried to hoist me up into [a] chair and because I was hurt so badly my legs
> were dragging and I had on rubber sole shoes that caused me to slide out
> of the chair when they were dragging me and my skirt fell off, my top flew
> up and my body was exposed from my breasts down to my thighs.

(*Id.* at 45:20-25.)  The officers were unsuccessful in getting Plaintiff in the chair, and

Plaintiff states that

> someone[3] grabbed me by the handcuffs and I remember letting out this
> blood curdling scream, it hurt so bad, they grabbed me, limp body, they
> dragged me all the way from the front desk and . . . I screamed all the way
> until they dropped me in the cell and slammed the door.

(*Id.* at 46:18-25.)

---

before the court that suggests any of the Defendants resemble the officer Plaintiff
describes.

   [3]Plaintiff is also unable to identify or describe the officer(s) who allegedly dragged
her to the cell because her "eyes were closed from the time they yanked me all the way
until they dropped me in the cell."  (Lloyd Dep. 46:7-10.)

4

Once in the cell, Plaintiff lost track of time but recalls specific events occurring, including: (1) an unidentified officer entering and removing the handcuffs, (*id.* at 48:5-6); (2) vomiting, (*id.* at 49:1); and (3) Officer Ray asking her if she had a minor child at home, to which Plaintiff responded "you didn't want to help me in the first place, just go back to your job," (*id.* at 50:6-11).  Further, some time after Defendant Ray entered the cell, Defendant Sergeant Brian Franz informed her that she was free to leave and that she could either "walk out the front door" or be transported by EMS; Plaintiff asked for EMS transport.  (*Id.* at 55:14-16.)  An unidentified "jailer" then grabbed Plaintiff by the hands and pulled her out of the cell into the hallway to wait for EMS transport.  (*Id.* at 52:14-19.)  While laying in the hallway, Plaintiff claims that Defendant Sergeant David Marshall "stepped over my body and was laughing at me." (*Id.* at 54:25-55:3.)  Plaintiff's sister, Darneice Rutledge, arrived at the police station before EMS and waited with her.  Rutledge recalls Plaintiff having difficulty walking and bruised hands.  (Rutledge Dep. 8:2-4, Oct. 10, 2011, Dkt. # 38-8.)  Upon EMS's arrival, Plaintiff was transported to Detroit Receiving Hospital.

Defendant Franz was the cellblock supervisor on the night of Plaintiff's arrest. (Franz Dep. 6:6-11, Oct. 20, 2011, Dkt. # 38-9.)  According to Franz, Plaintiff was brought into the cell block at 9:30 p.m. on a fugitive traffic warrant issued by the City of Hamtramck.  (*Id.* at 7:1-3.)  Hamtramck police were contacted sometime around 10:30 p.m., and they instructed the Detroit police to "advise and release."  (*Id.* at 7:4-9.)  After being advised to release Plaintiff, Franz states that Plaintiff "refused to leave and . . . requested EMS.  She stated she was sick.  And five minutes later, after talking—I believe I must have been talking to her, and I immediately requested EMS for her." (*Id.*

5

at 7:11-15.)  The EMS report, attached as an exhibit to Plaintiff's response, indicates that EMS was dispatched at 11:09 p.m., approximately one hour and 49 minutes after Plaintiff was arrested and placed in the cell.  (Pl.'s Resp. Ex. 10.)

Plaintiff complains of various injuries to her head, shoulder, hip, and wrists resulting from her arrest.  (Lloyd Dep. 38:18-40:20.)  The injuries to her head, shoulder, and hip were purportedly caused by being pulled to the ground, and her wrist injuries were caused by the handcuffs.  (*Id.*)

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'—that is, pointing out to the district

6

court—that there is an absence of evidence to support the nonmoving party's case."
*Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).
The burden then shifts to the nonmoving party, who "must do more than simply show
that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.
Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put
forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369
F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate
when "the evidence presents a sufficient disagreement to require submission to a jury."
*Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly
supported motion for summary judgment—the disputed factual issue must be material.
*See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable
jurors could find by a preponderance of the evidence that the plaintiff is entitled to a
verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a
verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration
in original) (citation omitted)). A fact is "material" for purposes of summary judgment
when proof of that fact would establish or refute an essential element of the claim or a
defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.
1984) (citation omitted).

### III. DISCUSSION

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting
under color of state law, abridges "rights privileges or immunities secured by the

7

Constitution and laws." To state a claim under § 1983, a plaintiff must prove "both that 1) she was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted). Plaintiff alleges the following violations of her federal constitutional rights: (1) excessive force in violation of the Fourth Amendment, as incorporated by the Fourteenth Amendment; (2) wrongful arrest in violation of the Fourth Amendment, as incorporated in the Fourteenth Amendment; (3) retaliatory arrest in violation of the First Amendment, as incorporated in the Fourteenth Amendment; and (4) deliberate indifference to the Plaintiff's medical needs in violation of the Fourteenth Amendment. She also asserts a single claim against Defendant City of Detroit for municipal liability under § 1983.

"Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010) (citation omitted). In a § 1983 case, a defendant is entitled to summary judgment "unless the facts alleged and the evidence produced when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison v. Bd. of Trs. Of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (citation omitted). In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court abandoned the mandatory two-step sequential qualified immunity analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), and held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the

8

two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.

## A. Excessive Force

Plaintiff alleges that Defendants used excessive force in subduing and arresting her.  "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that 'arise [ ] in the context of an arrest or investigatory stop of a free citizen' . . . ."  *Aldini*, 609 F.3d at 864 (alteration in original) (quoting *Graham*, 490 U.S. at 394).  The Fourth Amendment "requires that an officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure, and entails 'deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case.'"  *Id.* at 865 (quoting *Phelps v. Coy*, 286 F.3d 295, 299-300 (6th Cir. 2002)).

The record before the court is devoid of any evidence supporting Plaintiff's excessive force claims against Defendants Franz, Marshall, and Germaine.  Plaintiff fails to proffer evidence tending to show—nor does she even suggest—that these three Defendants were involved in her arrest.  Indeed, Plaintiff's deposition testimony indicates that Defendant Franz did not have any interaction with her until sometime after she was placed in the cell, (*see* Lloyd Dep. 62:7-10), and Defendant Marshall's only contact with her involved him allegedly stepping over her while she was in the hallway

9

waiting for EMS to arrive, (*see id.* at 61:22-62:3).  While Plaintiff states that Defendant

Germaine was initially in the lobby of the police station when she attempted to file her

police report, there is no indication in the record that Sergeant Germaine participated in

the arrest.  Therefore, having found no genuine issue of material fact exists regarding

these three Defendants' participation in the arrest, the court will grant summary

judgment in favor Defendants Franz, Marshall, and Germaine on Plaintiff's excessive

force claim.

Plaintiff has proffered evidence to at least place in dispute whether Defendants

Cooper and Ray were involved in her arrest.  Defendant Cooper admits to informing

Plaintiff that she was under arrest and assisting several other officers in the actual

arrest, (Cooper Dep. 11:12-15), and despite Defendant Ray's insistence that she did not

arrest Plaintiff, (Ray Dep. 27:6-9), both Defendants and Plaintiff present as evidence an

arrest report that identifies Defendant Ray as an officer assisting in the arrest, (*see*

Def.'s Mot. Summ. J. Ex. C; Pl.'s Resp. Ex. 6).  An excessive force claim, however,

requires more than merely proving that a defendant was *involved* in the seizure of an

individual; Plaintiff must also show that any force used by Defendants Cooper and Ray

was unreasonable.  *See Brower v. Cnty. of Inyo*, 109 U.S. 593, 599 (1989) ("'Seizure'

alone is not enough for § 1983 liability; the seizure must be unreasonable.").

Here, Plaintiff's testimony indicates that an unidentified female officer drew her

weapon, pressed it against Plaintiff's body, and forcibly pulled her to the ground, and

she was thereafter dragged to a cell.  Such force, Plaintiff argues, was objectively

unreasonable in light of Defendants Ray's and Cooper's testimony suggesting that

neither Defendant viewed Plaintiff's conduct as threatening.  (*See* Ray Dep. 26:20-21

(Defendant Ray stating that she did not recall being in fear for her supervisor's safety);
Cooper Dep. 10:21-11:3 (Defendant Cooper stating that Plaintiff throwing her bag on
the counter did not seem threatening to her because it was not directed at the officers).)
Plaintiff has established that a triable issue of fact exists regarding whether the
*unidentified officers'* use of force was "objectively reasonable." Based on the evidence
presented by Plaintiff, a reasonable inference can be made that Plaintiff's actions did
not pose a serious threat to the Defendants or the public, and that the force used by the
officers, in light of the totality of circumstances, may have been unreasonable.

However, despite establishing that a genuine issue of fact exists as to the
reasonableness of the unidentified arresting officers' use of force, Plaintiff has failed to
proffer sufficient evidence to establish that Defendants Cooper and Ray engaged in any
such objectively unreasonable conduct. As to Defendant Ray's conduct, Plaintiff's
deposition testimony precludes a finding by a jury that Defendant Ray was the
unidentified officer who drew her weapon and pulled Plaintiff to the ground, because
Plaintiff stated that Defendant Ray, upon seeing the officer draw her weapon, removed
the weapon from the officer's possession and placed it in a drawer behind the front
desk. (Lloyd Dep. 35:12-16.) Plaintiff has also failed to identify a genuine issue of
material fact as to whether Defendant Cooper was the officer who drew her weapon and
pulled Plaintiff to the ground. Despite Defendant Cooper's admitted participation in the
arrest, there is no evidence in the record suggesting that Defendant Cooper resembles
the physical description of the officer who, according to Plaintiff, drew the weapon.
Plaintiff describes the officer as a young African-American female, with black hair, a
bowl haircut, and a short and stocky build. (Lloyd Dep. 34:14-35:7.) Where numerous
officers were involved in the arrest, it would be unreasonable to infer that Defendant

Cooper was the officer who drew her weapon merely because she was female, as was the officer about whom Plaintiff complains. At the very best, the record creates a metaphysical possibility that Defendant Cooper was the officer who drew her weapon. That possibility, however, is not sufficient to survive a motion for summary judgment. Further, there is no evidence in the record suggesting Defendants Cooper or Ray were one of the unidentified officers who allegedly dragged Plaintiff to the cell. Because the record lacks sufficient evidence to raise a genuine issue of material fact for trial, summary judgment on Plaintiff's excessive force claim will be granted in favor of Defendants Cooper and Ray.

## B. Wrongful Arrest

Plaintiff also alleges that Defendants violated her Fourth Amendment rights by arresting her without probable cause. Where a plaintiff has been wrongfully arrested under the color of state law, a § 1983 claim based on the Fourth Amendment lies. "'[I]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police officer lacked probable cause.'" *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). "'Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.'" *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)). The existence of a facially valid arrest warrant gives officers probable cause to make an arrest. *See Cunningham v. Reid*, 337 F. Supp. 2d 1064, 1073 (W.D. Tenn. 2004). Further, "under § 1983, 'an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light

12

of clearly established law and the information possessed at the time by the arresting agent.'" *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009) (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)). "[E]ven if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011).

Plaintiff fails to make out a wrongful arrest claim against Defendants Franz, Marshall, and Germaine for substantially the same reason she fails to make out excessive force claims against each of these defendants. The record does not support an inference that they participated in the arrest of Plaintiff. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) (upholding district court's grant of summary judgment in favor of a detective who did not participate in the arrest and did not have contact with arrestee until after the arrestee had been arrested and booked). Indeed, Defendants Franz and Germaine, similar to the detective in *Radvansky*, did not interact with Plaintiff until after she was arrested and placed in the cell, and Defendant Germaine's contact with Plaintiff came before she was arrested.

Plaintiff is also unable to maintain a wrongful arrest claim against Defendants Cooper and Ray. Defendants have proffered evidence tending to establish that a warrant for Plaintiff's arrest was outstanding on the day of the arrest and the arresting officers were aware of the warrant. (*See* Mot. Summ. J. Ex. C (stating in the arrest report narrative that "Per LEIN offender had traffic warrant Hamtramck OCA: 07905870M $550").) Thus, Defendants have initially established that probable cause

13

existed for Plaintiff's arrest, and the burden is on Plaintiff to establish that a triable issue

of fact nevertheless exists.  Attempting to establish an issue of material fact, Plaintiff's

counsel suggests that Plaintiff was never informed of the reason for her arrest and

implies that the warrant was pretext for a more sinister impetus behind the arrest.

First, Plaintiff's counsel argues that "**[a]t no time was Ms. Lloyd informed why**

**she was being arrested.**" (Pl.'s Resp. at 6 (emphasis in original).)  Such an assertion,

however heavy and underlined the typeface may be, is contradicted by Plaintiff's

testimony in which she states that she was informed on the day of her arrest that she

had an outstanding arrest warrant issued by the City of Hamtramck.  (Lloyd Dep. 60:24-

61:2.)  Counsel also argues that the police gave varying explanations for Plaintiff's

arrest, (*see* Pl.'s Resp. at 6), and these contradictory justifications imply that the officers

had an ulterior motive, (*id.* at 20 (stating that "maybe the Defendant Officers . . . wanted

to teach Ms. Lloyd a quick lesson or punish her for being annoying")).  According to

counsel, the arrest report indicates that Plaintiff was arrested for obscene and disorderly

behavior,[4] the desk blotter report states that she was arrested on a warrant issued by

the City of Hamtramck, and an officer at the police station told Plaintiff's sister that she

was arrested for a "sex offense."  (*Id.*)  Merely proffering evidence tending to show that

---

[4]Counsel's citation to exhibit six of Plaintiff's response to support his claim that
disorderly conduct, not a warrant, was the arrest report's listed justification is puzzling,
because that exhibit, a report authored by Defendant Cooper, states that Plaintiff was
arrested pursuant to an outstanding traffic warrant, not because she acted disorderly.
(*See* Pl.'s Resp. Ex. 6 (describing the offense as "8940-Warrants-Corporate Summons"
and stating that Plaintiff had an outstanding traffic warrant).)
     Counsel explained during oral argument that he inadvertently failed to attach a
second police report which indicates that Plaintiff was arrested for "disorderly/obscene
conduct" pursuant to Detroit City Ordinance 38-5-1, and it was this second report that
he was referencing in his brief.

the police offered various justifications for Plaintiff's arrest, however, does not create a genuine issue of material fact as to whether the police in fact had probable cause to arrest Plaintiff, because "probable cause to believe that a person has committed *any* crime will preclude an unlawful arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Alman v. Reed*, No. 08-14168, 2010 WL 4106686, at *15 (E.D. Mich. Oct. 7, 2010) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).[5]  Plaintiff presents no other evidence tending to refute Defendants' evidence that the arresting officers had knowledge at the time of the

---

[5]Counsel's assertion that the warrant was merely pretext for the real reason for Plaintiff's arrest also fails to create a genuine issue of fact.  The motive of an arresting officer is not relevant to a Fourth Amendment wrongful arrest claim.  *See Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011) (stating that motive is relevant to First Amendment retaliatory arrest claims but not relevant to Fourth Amendment claims).

arrest of a valid, outstanding warrant.[6]  Accordingly, summary judgment will be entered

in favor of Defendants Cooper and Ray.

### C. Retaliatory Arrest

In addition to a wrongful arrest claim, Plaintiff alleges that her arrest was a result

of the Defendant Officers retaliating against her for exercising her First Amendment

right to freedom of speech.  To establish a First Amendment retaliation claim, a plaintiff

must prove three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was
> taken against the plaintiff that would deter a person of ordinary firmness

---

[6]During oral argument, counsel also stated that he doubted whether the arrest
warrant ever existed.  Such an assertion, however, supported only by counsel's "gut
feeling" is insufficient to impugn the evidence proffered by Defendants.  Even were the
court to accept counsel's doubt and assume that the arrest warrant was non-existent,
Defendants Cooper and Ray would nonetheless be entitled to summary judgment on
qualified immunity grounds.

   The uncontroverted facts in this case establish that Plaintiff entered the police
station, became upset with the service she received, began screaming or at a minimum
talking in a louder than her normally very loud manner, and disobeyed Defendants
Cooper's and Ray's direction to leave the police station.  On these facts, the court
concludes that "the officer[s] reasonably could have believed that the arrest was lawful"
pursuant to Detroit City Ordinance 38-5-1, which states, in relevant part, that "[a]ny
person who shall make or assist in making any noise, disturbance, or improper
diversion or any rout or riot, by which the peace and good order of the neighborhood is
disturbed . . . shall be guilty of a misdemeanor," City of Detroit Ord. 38-5-1.  The
conduct exhibited by Plaintiff could lead a police officer to reasonably believe that
Plaintiff's use of a noticeably raised voice coupled with her repeated refusal to obey
directions to vacate the police office gave rise to a disturbance of "peace and good
order."  *Id.*  The court knows of no authority, and Plaintiff has pointed to none,
supporting the obvious implication of her theory, i.e., that law enforcement officers in an
office environment are— precisely because of their law enforcement
employment—prohibited from attempting to maintain a peaceful and orderly surrounding
in which to conduct business. The court thinks that officers are entitled to so attempt,
and that Plaintiff's admitted behavior is capable of being construed by an objectively
reasonable officer as contrary to such peaceful interests. Defendants Cooper and Ray
would accordingly be shielded from liability under the present circumstances by qualified
immunity.

16

> from continuing to engage in that conduct; and (3) there is a causal
> connection between elements one and two—that is, the adverse action
> was motivated at least in part by the plaintiff's protected conduct.[7]

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Unlike wrongful

arrest claims under the Fourth Amendment, the motive of an arresting officer is relevant

to a retaliation claim under the First Amendment.  *Kennedy*, 635 F.3d at 217.  "Because

direct evidence of motive is difficult to produce, 'claims involving proof of a defendant's

intent seldom lend themselves to summary disposition" and "circumstantial evidence

may provide sufficient evidence of retaliatory intent to survive summary judgment.'"  *Id.*

at 218 (quoting *Holzemer v. City of Memphis*, 621 F.3d 512, 525-26 (6th Cir. 2010)).

Where "a plaintiff raises an inference that the defendant's conduct was motivated in part

by plaintiff's protected activity, the burden shifts and defendant 'can demonstrate that it

would have taken the same action in the absence of the protected activity.'"  *Ctr. For*

*Bio-Ethical Reform, Inc. V. City of Springsboro*, 477 F.3d 807, 821 (6th Cir. 2007)

(quoting *Arnett v. Myers*, 281 F.3d 552, 560-61 (6th Cir. 2002)).

Defendants Franz, Marshall, and Germaine are again entitled to summary

judgment on Plaintiff's retaliation claim because the record fails to create a genuine

issue of material fact as to whether they participated in her arrest.  There is simply not

enough evidence before the court to find that these three defendants either arrested

Plaintiff or retaliated against her in any other way.  Plaintiff could, however, maintain

retaliation claims against Defendants Cooper and Ray if she were able to satisfy the

---

[7]The United States Court of Appeals for the Sixth Circuit has yet to decide
whether lack of probable cause is an element in retaliatory arrest claims under the First
Amendment.  *Kennedy*, 635 F.3d at 217 n.4.

elements enunciated in *Thaddeus-X*.  Even assuming she proves that she was engaged in conduct protected by the First Amendment and her arrest constituted an adverse action that would deter "a person of ordinary firmness," Plaintiff ultimately fails to proffer sufficient evidence to place in dispute whether her arrest was "motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X*, 175 F.3d at 394.

Plaintiff argues that the facts of this case are similar to those in *Kennedy*, in which the Sixth Circuit found that a triable issue of fact existed as to whether the plaintiff's arrest in that case was motivated by his protected conduct where he screamed obscenities at a police officer and was subsequently arrested for disorderly conduct. *See Kennedy*, 635 F.3d at 219.  Plaintiff claims that her arrest, like the arrest of the plaintiff in *Kennedy*, was simply a result of the Defendant Officers wanting "to teach Ms. Lloyd a quick lesson or punish her for being annoying." (*Id.* at 20.)  Unlike the plaintiff in *Kennedy*, however, Plaintiff has not presented even circumstantial evidence of retaliatory intent, and therefore has not raised "an inference that the [Defendants'] conduct was motivated in part by [P]laintiff's protected activity."  *Ctr. For Bio-Ethical Reform, Inc.*, 477 F.3d at 821 (internal quotation marks omitted).  In *Kennedy*, the Sixth Circuit found that the plaintiff proffered evidence showing that the defendant, after being subjected to insults and vulgarities, came running at the plaintiff,  got in his face, and arrested him "immediately after [the plaintiff] called [the defendant] a 'fat slob.'" *Kennedy*, 635 F.3d at 219.  According to the court, such evidence tended to show "that the content of [the plaintiff's] speech may have been a motivating factor for [the defendant] to arrest [the plaintiff]."  *Id.*  Here, instead of proffering circumstantial evidence related to the reactions or motives of Defendants Cooper and Ray, Plaintiff

18

argues that because she did not violate the Michigan disorderly conduct statute, Mich. Comp. Laws 750.167, her arrest was "in retaliation for criticisms of the Officers in their failure to render their assistance." (Pl.'s Resp. at 16.)  Plaintiff's argument, however, is off the mark, because it merely suggests that Defendants Cooper and Ray did not have probable cause to arrest her, and fails to raise an inference of improper motive. Whether Plaintiff's actions did or did not constitute disorderly conduct, the court has already found that as a result of the outstanding warrant for Plaintiff's arrest, Defendants Cooper and Ray had probable cause to arrest her.  Further, Plaintiff's desultory musing that "maybe . . . the Defendant Officers in question were fed up with Ms. Lloyd and her numerous reports," and that "maybe the Defendants Officers in question wanted to teach Ms. Lloyd a quick lesson or punish her for being annoying," do not come close to justifying an inference that her arrest was motivated by her exercise of protected conduct.  Therefore, Defendants Cooper and Ray are entitled to summary judgment because Plaintiff cannot establish that she was subjected to a retaliatory arrest in violation of the First Amendment.

### D. Deliberate Indifference to Medical Needs

Plaintiff's fourth claim against the Defendant Officers is one for deliberate indifference to her medical needs.  "The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with deliberate indifference toward the inmate's serious medical needs.  Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citations omitted).  A deliberate indifference to medical needs claim has both an objective and subjective

19

prong.  "The objective component requires the existence of a 'sufficiently serious' medical need."  *Id.*  To satisfy this prong, the Plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  The subjective prong of the analysis requires Plaintiff to show that the "officials have 'a sufficiently culpable state of mind in denying medical care.'"  *Blackmore*, 390 F.3d at 895 (quoting *Brown*, 207 F.3d at 867).  "Under [*Farmer v. Brennan*, 511 U.S. 825 (1994)], 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Id.* at 896 (quoting *Farmer*, 511 U.S. at 837).  "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."  *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).

Addressing the objective prong of the analysis, the Sixth Circuit in *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001), held that "'an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'"  *Napier*, 238 F.3d at 742 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)).  *Blackmore*, however, modified the holding of *Napier*, stating that "*Napier* applies where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious."  *Blackmore*, 390 F.3d at 898.  Where a plaintiff's claim arises

20

> from an injury or illness so obvious that even a layperson would easily
> recognize the necessity for a doctor's attention, the plaintiff need not
> present verifying medical evidence to show that even after receiving the
> delayed necessary treatment, his medical condition worsened or
> deteriorated. Instead, it is sufficient to show that he actually experienced
> the need for medical treatment, and that the need was not addressed
> within a reasonable time.

*Id.* at 900 (internal quotation marks and citation omitted).

Here, the essence of Plaintiff's claim is that the Defendant Officers acted with deliberate indifference when they delayed calling EMS after she first stated during the arrest that she did not feel well and intended to go to the hospital after she filed a police report. Plaintiff, however, fails to put forth sufficient evidence to satisfy the objective prong of the deliberate indifference analysis. The proffered medical records, consisting of an EMS report and various hospital records, do not establish that Plaintiff was experiencing a "sufficiently serious" medical need, nor do they satisfy the *Napier* requirement of producing "verifying medical evidence" tending to show that the delay in treatment was detrimental to Plaintiff. The EMS report states that Plaintiff complained of "arm and wrist pain," but was in "no apparent distress" when EMS arrived and had "full range of motion in all 4 limbs." (Pl.'s Resp. Ex. 10, Dkt. # 38-10.) Plaintiff's diagnosis at the emergency room the night of her arrest also reflects the relative mildness of her injuries, indicating that she suffered "upper extremity" and hip contusions which would take "a few days to a few weeks to heal." (Pl.'s Resp. Ex. 11, Dkt. # 38-11.) No medical record proffered by Plaintiff states that she complained of feeling unwell or exhibited symptoms related to not feeling well. These records fail to present a genuine question as to whether the Defendant Officers' failure to immediately

call EMS created a "substantial risk of serious harm" such that the objective prong of the
analysis is satisfied.

   Further, the "obviousness" standard set forth in *Blackmore* does not apply to
Plaintiff's claim.  Plaintiff's own evidence clearly shows that her alleged maladies—a
general feeling of unwellness and contusions to her hip and upper extremity—were not
so obvious that a layperson would "easily recognize the necessity for a doctor's
attention." *Blackmore*, 390 F.3d at 900.  Plaintiff's statement to the arresting officers
that she intended to go to the hospital *after* she filed her report because she did not feel
well, (Lloyd Dep. 37:25-38:4), suggests that even Plaintiff did not believe her condition
required immediate medical attention.  Simply making a generalized statement about
not feeling well is insufficient to establish the obviousness of one's illness.  EMS's initial
assessment of Plaintiff's condition at the police station, which describes her as being
fully oriented and having full mobility in her limbs and not exhibiting any signs of
distress, (Pl.'s Resp. Ex. 10, Dkt. #38-10), also suggests that her injuries were not
sufficiently obvious.  Moreover, even were the evidence presented by Plaintiff to create
a genuine dispute as to whether her injuries and illness were so obvious that the
Defendant Officers should have recognized her need for medical attention, Plaintiff has
not presented any evidence establishing that the approximately one hour and 49 minute
delay between when she first complained of feeling unwell and when Defendant Franz
called EMS was unreasonable.  In *Hubbard v. Gross*, 199 F. App'x 433 (6th Cir. 2006),
the Sixth Circuit upheld a directed verdict in favor of the defendants even though the
plaintiff had established subjective deliberate indifference and showed that the injury
was so obvious a layperson would easily recognize it, because plaintiff failed to "show

22

that his broken hand was so serious that a two-hour delay in receiving a splint [was] unreasonable." *Id.* at 438.  In this case, Plaintiff also fails to show that the delay between her arrest and when Defendant Franz called EMS was unreasonable in light of the nature of her injuries.

Because Plaintiff fails to establish a genuine issue as to whether she satisfied the objective prong, it is unnecessary to address the subjective prong of the deliberate indifference standard.  The court will, however, briefly observe that the evidence before it does not appear to establish that the Defendant Officers' "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs," *Horn*, 22 F.3d at 660, was such that they acted with subjective deliberate indifference to Plaintiff's medical needs.  Plaintiff's proffered evidence fails to create a dispute as to whether the Defendant Officers acted with deliberate indifference to a sufficiently serious medical need, and, thus, summary judgment will be granted in favor of Defendant Officers.

### E. Municipal Liability

Finally, Plaintiff asserts a § 1983 municipal liability claim against Defendant City of Detroit.  "To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights."  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010) (citing *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007)).  Here, the court found that Plaintiff raised a genuine issue of material fact as to whether the unidentified arresting officers used objectively unreasonable force in her seizure, and therefore, for the

23

purposes of summary judgment, Plaintiff has satisfied the first prong of municipal liability analysis. However, Plaintiff has wholly failed to demonstrate that a policy or custom of the Defendant City of Detroit was the "moving force" behind the alleged deprivation of her constitutional rights.

According to Plaintiff, pursuant to both a Department of Justice Consent Decree and the Detroit Police Department Manual, City of Detroit police stations are to preserve survelliance video for at least 90 days, (*Id.* at 17). Plaintiff argues that Defendant City of Detroit's failure to maintain the surveillance video from the night of the incident is "clear evidence of the City's violation of the constitutional rights of the citizens of Detroit, OR the Defendant City did have the video footage that was properly requested by Ms. Lloyd and opted not to turn over the evidence because it supported Ms. Lloyd's version of the facts." (Pl.'s Resp. at 11.) Even accepting as true her contentions that Defendant City of Detroit is required to maintain survelliance video and it failed to do so, Plaintiff has failed to show that a municipal policy or custom was the "moving force" behind any deprivation of her constitutional rights. Plaintiff's argument regarding the missing video is essentially an expression of her dissatisfaction with Defendants' failure to produce requested discovery. Such dissatisfaction could have been the proper subject of a discovery motion, but Plaintiff offers no evidence, other than conclusory speculation, that the missing video resulted from improper acts of Defendants. The court will therefore grant summary judgment in favor of Defendant City of Detroit.

**IV. CONCLUSION**

Accordingly, IT IS ORDERED that Defendant's motion for summary judgment

[Dkt. # 36] is GRANTED.


S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 28, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, December 28, 2011, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522